THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL CARRASQUILLO, Defendant-Appellant.

First District (2nd Division)   No. 87—1627

Opinion filed August 9, 1988.—Rehearing denied October 14, 1988.

Joel T. Pelz and John J. Dunbar, both of Jenner & Block, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Patricia Brown, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a bench trial, defendant was convicted of murder and sentenced to 25 years in the custody of the Illinois Department of Corrections. He appeals, arguing that the trial court's imposition of sanctions in the form of prohibiting defense counsel from cross-examining the State's sole eyewitness or presenting rebuttal testimony regarding prior inconsistent statements made by that witness was reversible error.

Defendant was arrested on November 25, 1985, and charged with murder. His trial took place on two separate days, February 26, 1987, and March 30, 1987. On the first day of trial, prior to calling Osnaldo Noa as its first witness, the State moved for an order requiring the defense to produce its summary of a statement made by Noa. The State informed the court that prior to trial it had requested defense counsel to tender summaries of statements of defense witnesses. On the morning of trial, defense counsel advised the State that they had a summary of a statement by Noa, specifying that he was the State's witness. Defense counsel argued to the court that they believed the summary was protected by the work-product doctrine, and suggested that the court examine the summary *in camera*, determine what parts, if any, were work product, and release the remaining portions to the State. When the State did not object to this procedure, it was followed by the court. After looking over the summary the trial court found that it "need not be turned over" to the prosecution. During

cross-examination, the trial judge permitted defense counsel to ask Noa about statements he had made during the interviews contained in the summary.

Noa testified to the following: During the early morning hours of November 25, 1985, Enrique Cintron, the victim, and his uterine brother Hecktor Ortiz arrived at the Nevada Bar on Armitage Avenue in Chicago, where Noa was a bartender. They ordered a few beers and played music on the jukebox. Defendant and two companions were also at the Nevada Bar, playing pool. At about 12:30 a.m., an argument developed between defendant and the two brothers, and they began fighting. After Noa asked the three to leave they continued fighting outside the bar. Noa then called the police, who broke up the fight.

Approximately 40 minutes later the brothers returned to the bar, apologized to Noa and ordered more beers. Shortly thereafter defendant entered the bar, and Noa asked him to leave. As he was going towards the door, defendant asked the brothers to step outside with him. Other men followed the brothers as they walked out, and once they were outside three men jumped Ortiz and three others jumped Cintron. Noa locked the front door and, about five minutes later, he heard four shots, fired in rapid succession. After the shooting ended, Noa opened the door and saw that Cintron had been shot.

On the second day of trial the State called Ortiz as a witness, but did not request defense counsel to tender any investigative notes or summary from interviews with Ortiz as it had done with respect to Noa. On direct examination, Ortiz testified that after the three men jumped him, he tried to run across the street to a gas station, but when he was about halfway across the street, his assailants grabbed his jacket, causing him to turn and fall. Before he fell, he heard two or three shots; however, he did not know where thoses shots came from. When he fell down in the street, he was facing his brother and defendant; the other men had run away. Ortiz ran to the door of the bar, but it was locked. He then saw defendant raise both hands, aim, and shoot the victim, after which defendant ran down Armitage towards St. Louis Avenue.

Ortiz' testimony included a number of statements which were contrary to those he had given to defense counsel during pretrial interviews. First, Ortiz told defense counsel that his brother had instigated the first argument with defendant, but at trial he denied making this statement. Secondly, Ortiz told defense counsel that he was struggling with his three attackers as he ran across the street when he heard the first three shots; that he first heard police sirens while he was strug-

gling with these men, and that the men ran away upon hearing the sirens; and that his brother's assailant ran up Armitage from St. Louis Avenue and shot his brother. At trial, however, Ortiz said that he did not hear sirens until after his brother was shot and that the other men ran away before they heard sirens. Ortiz also testified that the man who shot his brother was standing next to the victim the entire time and did not run up the street before he fired.

When defense counsel attempted to cross-examine Ortiz on these inconsistent statements the State objected.

"MR. O'CONNOR: Judge, we have not been tendered any summary of a statement.
\*\*\*

THE COURT: Now, Mr. Wedoff, you are going to be in trouble if you have any kind of a statement from this witness that has been reduced to writing, that you have not tendered to the State.

Is that so?

MR. WEDOFF: There are notes regarding that conversation.

THE COURT: No. You are supposed to reduce it to writing, and give it to the State.

Have you done so?

MR. WEDOFF: No, your honor.

THE COURT: Then you will not be permitted to inquire any further into any conversation.

MS. PAPANDREAS: Your Honor.

THE COURT: Yes, Miss Papandreas?

MS. PAPANDREAS: Your Honor, I would like to refer to an Illinois Supreme Court case—

THE COURT: I have ruled, Miss Papandreas.
\*\*\*

MR. WEDOFF: Can I make an offer of proof, your Honor?

THE COURT: Sustained. I said I'm not going to let you do it, because you violated the discovery rules.

MS. PAPANDREAS: Your Honor, may we approach the bench?

THE COURT: Yes, you may.

MS. PAPANDREAS: Your Honor, the last time we were in Court, we offered the summary of Osnaldo Noa's statement to you at the State's request, it was under the Illinois Supreme Court of People versus Boclair, which requires you to make an *in camera* viewing to decide whether—

THE COURT: But you didn't offer this witness' testimony, and it is trial time, you have had ample opportunity, I'm not going to waste any more time with it, I said, I'm not going to let you do it, it's as simple as that.

MS. PAPANDREAS: We will produce them now, if that makes a difference.

THE COURT: No, it doesn't make a difference."

Subsequently, the trial judge did not permit the defense to call its investigator, but he did allow it to make an offer of proof as to her testimony.

Eric Harlston, an acquaintance of Ortiz who was parked across the street from the Nevada Bar at the time of the occurrence, testified for the defense. He stated that he was waiting in his car while his friends went to a carry-out restaurant and that he had a clear view of the street in front of the bar. He testified that he saw two women and five men fighting in front of the bar and that he saw Paporte, a man with whom he had been in jail, run down the street away from the others, run upstairs to the second floor of a building, and then run back down the street towards the bar, wearing a hood. Harlston saw a "gap in his pocket," indicating to him that Paporte had a gun. Harlston heard arguing and then heard one or two gunshots; three seconds later he heard another gunshot. Paporte then ran down the street, firing one final shot before he ran down the alley. When police questioned him at the scene, Harlston told them that Paporte shot the victim.

Harlston also testified that Paporte has a dark complexion. Immediately after the shooting Ortiz described the assailant to the police as having a dark complexion, but he later changed that to a light complexion.

The trial judge found defendant guilty of murder and sentenced him to 25 years in the custody of the Illinois Department of Corrections. He denied defendant's post-trial motions (which are not included in the record on appeal, but are attached to defendant's brief). Defendant now appeals.

Opinion

■ Defendant argues that the trial court erred as a matter of law when it found that the defense violated discovery rules by failing to tender its notes from Ortiz' interview. Supreme Court Rule 413 provides in part as follows:

"(d) Defenses. Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the

State, defense counsel shall *** furnish the State with the following material and information within his possession or control:

(i) The names and last known addresses of persons he intends to call as witnesses, together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements, and record of prior criminal convictions known to him; and

(ii) any books, papers, documents, photographs, or tangible objects he intends to use as evidence or for impeachment at a hearing or trial;
***

(e) Additional Disclosure. Upon a showing of materiality, and if the request is reasonable, the court in its discretion may require disclosure to the State of relevant material and information not covered by this rule." 107 Ill. 2d R. 413.

Ortiz was a witness called by the State; therefore, defendant contends, Rule 413(d)(i) does not require him to produce a summary of his counsel's interviews with Ortiz. Defendant also claims that Rule 413(d)(ii) does not require him to produce a summary, because interview notes are not "papers." *People v. Boclair* (1987), 119 Ill. 2d 368, 519 N.E.2d 437.

In *Boclair*, defense counsel was held in contempt for refusing to turn over notes taken by an investigator during interviews with prospective prosecutorial witnesses, after the notes were requested by the State. The supreme court held that the notes were not discoverable under Rule 413(d)(ii), stating:

"The State contends that the defense investigator's notes are discoverable under Rule 413(d)(ii) ***. We reject this interpretation and agree with the appellate court, which concluded that the word 'papers' cannot be defined so broadly as to include the investigative notes at issue in this case." (119 Ill. 2d at 374.)

The court went on, however, to hold that the notes were discoverable under Rule 413(e).

"[T]he notes are relevant because they will prevent the State from being surprised by the inconsistent statements of its witnesses, and they will allow the State to prepare for impeachment and to rehabilitate its witnesses or restructure its cases if necessary. Since the defense investigator's notes were material and relevant to the legitimate ends of discovery, we conclude that the trial court did not abuse its discretion by ordering dis-

covery of the notes." (119 Ill. 2d at 375.)

In addressing defense counsel's contention that the notes were protected by the work-product doctrine, the court noted that it had previously held that "handwritten notes taken during an interview with a witness are not work-product *per se*," citing *People v. Szabo* (1983), 94 Ill. 2d 327, 447 N.E.2d 193, and went on to hold that the work-product rule was not violated.

> "In the case at bar, defendant's investigator's notes were examined *in camera* by the trial court. As required by *Szabo* [citation], the trial court excised irrelevant and privileged matter, and ordered defendant to turn over only the portions of the notes that contained factual statements which could 'fairly be said to be the witness' own words.' " *Boclair*, 119 Ill. 2d at 376.

Defendant contends that Rule 413(e) does not require him to produce the Ortiz notes, because, unlike *Boclair*, the State did not request, nor did the trial judge order, their production. He also argues that the notes were work product, and maintains that he had no duty to submit the notes to the State either prior to trial or at the time Ortiz testified; he concedes, however, that he would have an obligation to produce the notes if a defense investigator testified thereon. (*United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160.) Defendant further argues that, pursuant to *Boclair*, the trial court should have made an *in camera* inspection of the notes to determine whether they had to be tendered to the State.

The State responds that it did not have to make a specific request for the notes, as it had already made a written request for pretrial discovery and parties have a continuing duty to disclose discoverable material pursuant to Supreme Court Rule 415, which provides in part as follows:

> "(b) Continuing Duty to Disclose. If, subsequent to compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified." (107 Ill. 2d R. 415(b).)

Failure to comply with discovery rules may result in sanctions.

> "(g) Sanctions.
>
> (i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order is-

sued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 107 Ill. 2d R. 415(g).

The State further contends that the interview notes were properly discoverable, pursuant to *People v. Lego* (1987), 116 Ill. 2d 323, 507 N.E.2d 800. In that case, Lego argued that the trial court erred in compelling him to produce tape recordings made by a defense investigator of interviews with witnesses listed by the State. The appellate court first discussed Lego's argument that such production violated his constitutional right against self-incrimination, stating:

"We *** hold that statements of third parties elicited by the defendant's investigator were discoverable, and the People properly invoked the court's inherent power to require production of these statements." (116 Ill. 2d at 338-39.)

The court then addressed Lego's contention that the statements were protected by the work-product doctrine, finding the argument "to be without merit."

"The work-product rule *** protects from discovery the mental processes of an attorney in the preparation of his client's case. The verbatim statements of witnesses obtained by the investigator here do not fall within the scope of protection afforded by the rule." 116 Ill. 2d at 339.

The State also maintains that the trial court properly limited cross-examination of Ortiz as a sanction for the "flagrant violation of Rule 415(b)." It claims that the Supreme Court case of *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, is dispositive of this issue.

In *Taylor*, the trial judge refused to allow a witness to testify for the defense in an attempted murder case as a sanction for failing to identify that witness in response to a pretrial discovery request. Prior to trial, the prosecutor filed a discovery motion requesting a list of defense witnesses, to which defense counsel responded with the names of four persons. On the first day of trial, defense counsel was allowed to amend his answer by adding two more names. On the second day of trial, after the prosecution's principal witnesses had completed their testimony, defense counsel made an oral motion to amend his answer to include two more witnesses. In support of the motion, counsel represented that he had just been informed about them; however, in response to the court's inquiry as to the defendant's failure to tell counsel about the witnesses, counsel acknowledged that he had known

of them earlier, but was unable to locate them. (484 U.S. at ___, 98 L. Ed. 2d at 807, 108 S. Ct. at 649-50.) The court denied permission for the witnesses to testify, ruling that counsel should have listed their names in his answer to the State's request for discovery. The following day, counsel was permitted to make an offer of proof in the form of one of the witnesses' testimony, during which the witness admitted that defense counsel had visited him at his home a week prior to trial. Accordingly, the trial judge found a blatant and willful violation of the discovery rules and did not allow the witness to testify. The Illinois Appellate Court affirmed, and the Illinois Supreme Court denied leave to appeal.

On appeal to the United States Supreme Court, Taylor argued that the confrontation clause of the sixth amendment bars a court from ordering the preclusion of defense evidence as a sanction for violating a discovery rule. The Court responded, however, that a defendant does not have an "unfettered right to offer testimony," and that there are several limitations on a defendant's right to present exculpatory evidence. In upholding the exclusion of testimony, the Court stated:

> "Petitioner does not question the legitimacy of a rule requiring pretrial disclosure of defense witnesses, but he argues that the sanction of preclusion of the testimony of a previously undisclosed witness is so drastic that it should never be imposed. He argues, correctly, that a less dramatic sanction is always available. * * *
>
> It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process. * * *
>
> * * *
>
> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Confrontation Clause simply to exclude the witness' testimony." 484 U.S. at ___, 98 L. Ed. 2d at 813-14, 108 S. Ct. at 654-55.

■ Accordingly, since the objectives of pretrial discovery are "to

promote the fact-finding process and to eliminate the tactical advantage of surprise by either side" (*People v. Mahdi* (1980), 89 Ill. App. 3d 947, 957, 412 N.E.2d 669, citing *Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 35 L. Ed. 2d 297, 308, 93 S. Ct. 1038, 1045), and since these goals are served by broad disclosure between the prosecution and the defense, subject to constitutional limitations in favor of defendant (*People v. Boclair* (1987), 119 Ill. 2d 368, 373-74, 519 N.E.2d 437), they are quite clearly not served by one party's failure to inform both the court and opposing party of the existence of summaries and notes from interviews with a witness.

■ Defense counsel should have informed the court on the first day of trial that they had notes from interviews with both Noa and Ortiz; their argument that they were not required to do so is not convincing. We granted defendant's motion to supplement the record on appeal with an affidavit of his trial counsel, which stated that prior to trial they informed the State that they had notes from interviews with both Ortiz and Noa, that they believed the notes were not discoverable, that they would not produce the notes without a court order, and that they believed it was the State's obligation to request the notes in open court. The State objected to the inclusion of the affidavit in the record, but did not deny the statements contained therein, so we must assume they are true. Defendant contends that since the State knew of the Ortiz notes and did not request them, as it had the Noa notes, defense counsel had no obligation to produce them.

However, defendant's argument is flawed, because even if the State was aware of the Ortiz notes, the trial judge was not. On the first day of trial he was informed that defense counsel had notes from an interview with Noa, a prosecution witness, and was asked to review those notes to determine whether they were privileged. At that time defense counsel should have also produced the Ortiz notes to the trial judge and allowed him to decide whether they should have been produced to the State.

■ Finally, defendant argues that even assuming there has been a discovery violation, the trial court erred in barring defense counsel from questioning Ortiz about his previous statements. Although Rule 415(g) gives trial courts wide latitude in imposing sanctions, the one preferred for a discovery violation in a case such as the one at bar is a recess or continuation, if the granting thereof would be effective to protect the other party from prejudice or surprise. (*People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293; W. LaFave & J. Israel, Criminal Procedure §19.4 (1984).) Here, there has been no showing that defense counsel blatantly or willfully violated any discovery rules

*(Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646; *People v. Foster* (1986), 145 Ill. App. 3d 477, 495 N.E.2d 1141); instead, they were prepared to produce the interview notes for *in camera* inspection by the trial judge, as required by *Boclair*. A continuation for such an inspection would have protected the State from prejudice, especially in view of the fact, as we have noted at the beginning of this opinion, that the trial of this matter took place on two separate days, more than a month apart. As we have held above, defense counsel should have informed the court that they had notes from interviews with Ortiz at the same time they told the court about the Noa notes; however, their failure to do so does not warrant the severe sanction that was visited upon defendant. Accordingly, we hold that the trial court erred in prohibiting defense counsel from questioning Ortiz about his previous statements.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this case is remanded to the circuit court for a new trial.

Reversed and remanded.

HARTMAN, P.J., and BILANDIC, J., concur.