THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON M. JOHNSON, Defendant-Appellant.

First District (2nd Division)   No. 1—92—3423

Opinion filed May 17, 1994.

Serpico, Novelle & Navigato, Ltd., of Chicago (Robert A. Novelle and Joel A. Whitehouse, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sheila McGinnis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Jason M. Johnson was found guilty of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4 (now codified as 720 ILCS 5/12—4 (West 1992))) and sentenced to three years in the custody of the Department of Corrections. On appeal, defendant contends that (1) the circuit court erred in excluding two defense witnesses; (2) the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt; (3) he was denied effective assistance of counsel; and (4) the circuit court improperly advised a potential defense witness of his fifth amendment right against self-incrimination causing him to refuse to testify.

At trial, the following evidence was presented. Keith Spence testified that he was currently in custody and awaiting trial in Du Page County on a felony charge and was on probation for possession of a stolen motor vehicle. On the evening of September 29, 1991, he was home at his parents' apartment at 6009 West 26th Street in Chicago because he was grounded for staying out late the previous evening. He was also prohibited from using the telephone. At 11:45 p.m., he left the apartment and went to the fruit market across the street in order to call his girl friend from the pay phone. While he was talking with his girl friend, he noticed two men on the telephone across the street looking at him. A short time later, the two men were joined by two others on a moped.

After the group of four men spoke among themselves for a few minutes, they started walking towards him. As they came closer, he hung up the phone and began to back away. The four men began swearing at him and said that they were going to "whip [his] ass." Defendant, one of the four, was carrying a baseball bat and was wearing white sweatpants and a white, long-sleeved shirt. The three

other men were codefendant Ben Maciejewski, Darryl Haymes, and Randy Llewelyn. When they reached him, Maciejewski swung at him but he was able to duck away from the blow. Maciejewski then pulled his jacket over his head, threw him to the ground, and climbed on his back and began punching him. Spence was able to get the jacket away from his eyes, and he saw Haymes and Llewelyn kick and punch him. Defendant also hit him in the legs with the bat. He then heard both Maciejewski and Haymes tell defendant to hit him in the head, because "he deserve[d] to die." Defendant swung the bat at his head, but Spence was able to block it with his arm. At that point, Spence's mother yelled out her window and a police officer who was at the gas station arrived at the scene.

Defendant, Haymes, and Llewelyn ran away through an alley, but Maciejewski continued hitting Spence until the officer "pulled him off." Spence stood up and told the officer that his arm was hurt and that three other men were involved. The officer called in a request to have the area checked, and approximately three to five minutes later, a police car pulled up with defendant and Haymes. Spence identified defendant as the person who struck him with the bat and Haymes as one of the individuals who kicked him while he was on the ground. At the same time that the police arrived, he saw a woman named Lisa Saucedo at the scene, but stated that he did not see her earlier and that she was not with the four men initially. He was taken to a hospital, where he was treated for a broken arm, cuts on his face, knots on his head, and an injured leg.

Officer Joann Palermo of the Clyde Park district police force testified that on September 29, 1991, she was patrolling the area of 26th Street and Austin Avenue when she pulled into a gas station at that intersection at approximately 11:45 p.m. Tom Kuratko, an off-duty Cicero police officer and acquaintance of Palermo, pulled up behind her and the two began a conversation. As she refueled her squad car, Palermo noticed Spence standing alone by the telephone at the market across the street. Spence was holding nothing. She also noticed four young white men standing by the pay phones at the gas station, but did not see anyone with a baseball bat. She then heard some yelling between Spence and the four men, but did not know what it was about. She and Kuratko then went inside to sign the charge receipt.

When they came back out, she heard a "commotion" and saw Spence lying on the ground, being punched and kicked by four men. She also saw one of the men swinging a bat, but could not remember who it was or what he was wearing. She called for backup, and the two officers drove their cars across the street. As they pulled up,

three of the four men ran away. Codefendant Maciejewski, however, was still on the ground with Spence and was taken into custody at that time. Spence's arm began to swell and an ambulance was called. Two to three minutes later, an auxiliary unit pulled up with defendant and Haymes, and Spence identified them as two of the men who had attacked him. Besides Spence's mother, no other civilians were at that location. A baseball bat was recovered about 20 feet from where Spence was lying.

Cicero police officer Tom Kuratko testified that he was off duty when he followed Palermo into a gas station at 26th and Austin in order to talk with her. As they were refueling Palermo's car, he noticed four or five individuals standing around the phone near the gas station. He also noticed one person standing near the phone across the street, but could not see if that person was holding anything. He and Palermo then went inside and continued their conversation while she signed the charge receipt.

When they exited the cashier's office, he saw four men beating Spence. One of the men was holding him down while the others kicked him. Another one of the men had a baseball bat and swung it at Spence at least two times. Spence was on the ground trying to cover himself. He and Palermo got into their cars and drove about 75 feet to the scene. As they pulled up, three of the men fled, but codefendant Maciejewski was still "wrestling" with Spence and had to be pulled away. Although Kuratko identified defendant as one of the men he saw fleeing the area, he could not state which one swung the bat. He also stated that no one else was in the area when he pulled Maciejewski off Spence.

Spence's mother, Barbara Woods, testified that on the night in question, Spence was grounded for staying out late the night before and could not go out or use the telephone. At about 11:15 p.m., she disconnected the phones and took them to her bedroom with her so that Spence could not use them. Both her husband and her younger son were already asleep, but Spence was in his room with the door closed and the light on. While she was in her bed, she heard a lot of "commotion" and "yelling" coming from outside. When she got up and looked out her window, she saw her son lying on the ground across the street and four men standing over him, kicking, beating, and yelling dirty names at him. She yelled to the men to stop and that she was going to call the police. Defendant, who was wearing a white outfit which could have been a sweatshirt and sweatpants, was hitting Spence in the legs and chest with a baseball bat. One of the other men then yelled to hit his head instead of his legs, and defendant swung the bat at Spence's head. Spence blocked the blow with his arm, however.

Although she was unsure of the distance, Woods insisted that she could see well enough to identify the men. She identified defendant as the one with the baseball bat, and codefendant Maciejewski as one of the men who punched and kicked Spence.

As she was about to call the police, she noticed that they had already arrived and went outside. When she got outside, the officers were pulling Maciejewski off Spence. The three other men already had run away. She also noticed that Spence was holding his arm. About two minutes later, a squad car pulled up with defendant and Haymes in the back, and she identified them as two of the men who beat up her son.

Codefendant Maciejewski testified in his own behalf that on the night of September 29, 1991, he and Llewelyn were riding his moped and stopped at the gas station at 26th and Austin to use the phone. When they stopped, they noticed three men, one of whom was Spence, standing at the payphones directly across the street. Although Spence was swinging a baseball bat and challenging them to come over, he did not take Spence seriously.

As a squad car pulled into the gas station, Llewelyn walked across the street and began arguing with Spence. He could not hear the argument from across the street, however. When Spence began swinging the bat at Llewelyn, he also crossed the street and told Spence that he was going to tell the police who were at the gas station. Spence responded by swinging the bat at Llewelyn again.

When he approached Spence, Spence swung the bat at him but missed. He then charged Spence, who swung the bat and struck him in the back of the head. He threw Spence to the ground, and Spence dropped the bat as he tried to break his fall. No one kicked Spence or hit him with the bat while they were wrestling on the ground. The police arrived while he was still on top of Spence and everyone else ran away.

Maciejewski further testified that he saw defendant and Haymes walking toward the phones at the fruit market, but neither of them was involved in the fight. On cross-examination, he stated that he never received any treatment for the injury to his head.

Defendant testified in his own behalf that he was walking to the gas station at 26th and Austin with his friends Haymes and Lisa Saucedo because one of them wanted to use the payphone. As he was standing at the payphone, he noticed Spence and one other person across the street. Spence had a baseball bat on top of the phone. When Spence said something to him, he ignored it.

About five minutes later, Maciejewski and Llewelyn pulled up and the group of five stood there and talked. When Llewelyn and

Spence began yelling at each other, Spence picked up the bat and started swinging it back and forth. Llewelyn then walked across the street, followed by Maciejewski, who started wrestling with Spence. Defendant started to cross the street, but stopped halfway when he heard sirens. He then began walking away through an alley, but was picked up by the police. He stated that he never touched the bat, or saw Llewelyn or Maciejewski swing the bat at any time. On cross-examination, he stated that he was wearing a white short-sleeved Chicago Bulls T-shirt and light blue jeans which could have been mistaken for white sweatpants.

As previously indicated, the circuit court found defendant guilty of aggravated battery and sentenced him to three years' imprisonment.[1] This appeal followed.

Defendant first contends that the circuit court erred when it excluded the testimony of two defense witnesses who had not been disclosed prior to trial rather than simply granting a recess or a continuance. In response, the State maintains that the circuit court properly excluded the witnesses because defendant failed to list the witnesses in his answer to its discovery requests and failed to inform the State of his intention to call the witnesses until after the State had rested its case in chief.

As part of its pretrial answer to discovery, the State disclosed that it "may call as witnesses *** [a]ny and all persons named in reports, transcripts and tendered documents." In turn, defendant's disclosure listed as potential witnesses only himself, codefendant Maciejewski, Haymes, and Llewelyn. At trial, after the State rested its case in chief, defense counsel informed the assistant State's Attorney that he intended to call two witnesses who were not on his answer to discovery. The next day, when defendant tried to call his mother, Nancy Johnson, to testify, the State made a motion to bar her testimony as well as that of the other witness, Lisa Saucedo. Defense counsel responded that the State suffered no surprise because he brought both witnesses to the State's Attorney's office the day before. The assistant State's Attorney acknowledged that defense counsel brought both witnesses to her office, but stated that only Johnson consented to be interviewed. The assistant State's Attorney further argued that although there is a "Lisa" mentioned in the police reports, no last name was ever given. Defense counsel responded that he had no control over the witness and that he had learned of her

---

[1]The court also found codefendant Maciejewski guilty of aggravated battery and sentenced him to 30 months probation and six months in the county jail.

identity only a "few days" before trial. The court granted the State's motion and barred both witnesses from testifying.

Under Supreme Court Rule 413, a defendant must disclose to the State, upon written motion, the names and last known addresses, which are in his possession or control, of persons he intends to call as witnesses at trial. (134 Ill. 2d R. 413(d)(i).) Upon learning of a party's failure to comply with an applicable discovery rule, the circuit court "may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." (134 Ill. 2d R. 415(g)(i).) Although our courts have expressed a preference for recess or continuance as sanctions for discovery violations (see *People v. Carrasquillo* (1988), 174 Ill. App. 3d 1023, 1032, 529 N.E.2d 603, *appeal denied* (1989), 124 Ill. 2d 557, 535 N.E.2d 916), the determination of the appropriate sanction is a matter within the discretion of the circuit court and will be disturbed on appeal only where the sanction was prejudicial to the defendant. *People v. Flores* (1988), 168 Ill. App. 3d 284, 293, 522 N.E.2d 708.

In *People v. Tinoco* (1989), 185 Ill. App. 3d 816, 541 N.E.2d 1198, the court found no error in the circuit court's exclusion of two defense character witnesses because they were not listed on the defendant's response to the State's discovery request and were not disclosed until the close of the State's case. (*Tinoco*, 185 Ill. App. 3d at 826-27.) The court found that because of his long-standing relationships with the witnesses, the defendant could have "easily" disclosed the names, even if they ultimately proved reluctant to testify. (*Tinoco*, 185 Ill. App. 3d at 827.) Furthermore, the court found that defendant established no prejudice as a result of the circuit court's ruling, even though he made an offer of proof. *Tinoco*, 185 Ill. App. 3d at 827.

As in *Tinoco*, defendant here did not disclose the witnesses until the close of the State's case. There can be no question that defendant knew his mother's identity prior to trial, and defendant's own testimony placed Lisa Saucedo at the scene prior to the beating. Accordingly, defendant cannot provide a reason for failing to disclose the names of both witnesses.

Moreover, defendant cannot point to any prejudice that he suffered as a result of the court's order. No offer of proof was made regarding either witness' proposed testimony. Rather, the record contains only an affidavit by Saucedo, which was prepared for defendant's post-trial motion. In her affidavit, Saucedo states simply that she was an "eyewitness to, [*sic*] the incident involving Keith Spence and others on September 29, 1991, at 26th Street and Austin in Cicero, Illinois." Because no other information concerning her

testimony was given, we find no error in the circuit court's exclusion of Lisa Saucedo as a defense witness.

Although defendant has attached an affidavit by Nancy Johnson as an appendix to his brief, it is not part of the record and, accordingly, cannot be considered on appeal. (*In re Marriage of Sokolowski* (1992), 232 Ill. App. 3d 535, 542, 597 N.E.2d 675.) Even if we could consider the statements in the affidavit, however, they would have no effect on the circuit court's ruling. Johnson's affidavit merely states that on the night in question, defendant wore a pair of blue jeans and a white, red, and black Chicago Bulls T-shirt. Because this is consistent with defendant's own testimony regarding his clothing that night, and is not inconsistent with the other testimony of the clothing worn by the bat-wielding assailant, we cannot conclude that the result of the proceeding would have been different had Johnson been allowed to testify.

Defendant next contends that the evidence established at trial was insufficient to prove his guilt beyond a reasonable doubt. Specifically, he asserts that the fact that no witness had a clear or unobstructed view of the person swinging the baseball bat, when combined with the "inherently suggestive method of identification employed by the police," strengthens the possibility of an "irreparable misidentification." The State responds that defendant's guilt was "overwhelmingly" proved beyond a reasonable doubt by the evidence presented at trial.

A reviewing court will not set aside a conviction on the ground of insufficient evidence, unless "the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and thus creates a reasonable doubt of guilt." (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 333, 576 N.E.2d 1030.) A circuit court's determination will be reversed on appeal only if the reviewing court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.) The reviewing court cannot, however, "second-guess the trier of fact's evaluation of the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *People v. Murray* (1990), 194 Ill. App. 3d 653, 656-57, 551 N.E.2d 283; see also *People v. Steidl* (1991), 142 Ill. 2d 204, 226, 568 N.E.2d 837, *cert. denied* (1991), 502 U.S. 853, 116 L. Ed. 2d 125, 112 S. Ct. 161.

■ In the instant case, the circuit court expressly stated that it believed Spence's testimony that defendant struck him with the bat

and we cannot "second-guess" that credibility determination. Moreover, when viewed in the light most favorable to the prosecution, it is clear that the evidence was more than sufficient. Both Spence and Woods testified without equivocation that they were able to see that defendant was the person swinging the bat. They identified him at the scene and in court and were also able to give a clothing description. Furthermore, Palermo testified that Spence was not holding a bat, and both she and Kuratko said that Spence was standing alone when they first noticed him across the street, while a group of four or five individuals was standing near the phones at the gas station. Both officers testified that Spence was being beaten by a group of four men and one of the men was swinging a bat. The evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant next contends that his trial counsel was deficient, thereby denying him his constitutional right to the effective assistance of counsel. Specifically, he asserts that his attorney erred in (1) failing to list Nancy Johnson and Lisa Saucedo as potential witnesses in his answer to the State's request for discovery; (2) failing to make an offer of proof when the circuit court barred those witnesses from testifying; (3) failing to file a motion to suppress his identification; and (4) serving as trial counsel to both defendant and codefendant Maciejewski, thereby creating an impermissible conflict of interest.

In order to establish a claim of ineffective assistance of counsel, a defendant must first establish that his counsel was constitutionally deficient; that the "errors [were] so serious that counsel was not functioning as the 'counsel' guaranteed *** by the Sixth Amendment." (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) The inquiry is simply " 'whether counsel's assistance was reasonable considering all the circumstances.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061, quoting *Strickland,* 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) A defendant must also establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Due to interests of judicial economy, a court may first determine whether or not a defendant has suffered any prejudice as a result of the alleged deficiency before determining if one actually exists. *People v. Caballero* (1989), 126 Ill. 2d 248, 260, 533 N.E.2d 1089.

Defendant first asserts that his counsel was deficient for failing to include Nancy Johnson and Lisa Saucedo on the witness list. He maintains that his trial counsel's action of failing to disclose the

witnesses until the eleventh hour "clearly demonstrates that he was derelict in his duties and responsibilities to [defendant]." The State responds that defendant has failed to establish how he was prejudiced by the failure to disclose the witnesses prior to trial.

In *People v. Falconer* (1988), 168 Ill. App. 3d 618, 522 N.E.2d 903, the defendant asserted that her trial counsel was ineffective by failing to disclose a witness to the State during the discovery period. Although the witness was barred from testifying at trial, counsel made no offer of proof. The appellate court held that because the record failed to disclose the nature of the testimony, the defendant had failed to establish any prejudice resulting from the exclusion. *Falconer*, 168 Ill. App. 3d at 624.

■ In the instant case, as in *Falconer*, no offer of proof was made regarding the testimony of either proposed witness. Accordingly, defendant is unable to demonstrate any prejudice from his attorney's failure to include them on the witness list.

Moreover, defendant has failed to establish any prejudice as a result of his attorney's failure to make an offer of proof concerning Saucedo's testimony. Although Saucedo's affidavit states that she was an eyewitness to the incident, it provides no details of what her testimony would have been. Instead, it simply states that she spoke with defendant's attorney prior to trial and that she had appeared in court several times regarding this matter. Because defendant has failed to specify what her testimony would have been, and because it must be presumed from the affidavit that the attorney knew the substance of her testimony, defendant is unable to overcome the presumption that the attorney's decision not to make the offer of proof was a matter of sound trial strategy. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In any event, because the record fails to disclose what Saucedo's testimony would have been, we cannot say that the result of the trial would have been different had she testified.

Similarly, defendant can establish no prejudice as a result of the failure to make an offer of proof regarding Nancy Johnson's proposed testimony. Based on her affidavit, Johnson's testimony would simply have been that on the night in question, defendant was wearing a white, red and black Chicago Bulls T-shirt and blue jeans. Because this was consistent with defendant's own testimony, her testimony would have been merely cumulative. Since the court found that defendant was the one swinging the bat, despite defendant's testimony, it cannot be said that the result of the proceeding would have been different had she testified.

Defendant also asserts that his trial counsel was ineffective in

failing to make a motion to suppress his identification. He maintains that the circumstances surrounding his identification were unduly suggestive, and the identification could have been suppressed had a proper motion been made. In response, the State contends that any such motion would have been futile because the identification was not unduly suggestive.

■ Although unnecessarily suggestive identification procedures are improper as they may create a substantial likelihood of misidentification (*Neil v. Biggers* (1972), 409 U.S. 188, 198, 34 L. Ed. 2d 401, 410-11, 93 S. Ct. 375, 381-82), "show up" identification procedures are appropriate in situations involving a fleeing offender. (*People v. Manion* (1977), 67 Ill. 2d 564, 569-70, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The rationale underlying this exception to the general rule is that show up procedures facilitate the immediate release of an innocent suspect and allow the police to continue their search for a fleeing offender. (*Manion*, 67 Ill. 2d at 569-70.) In the instant case, the evidence established that the police began their pursuit of the fleeing offenders immediately and returned to the scene with both defendant and Haymes only minutes after the beating took place. Because the police would have released them and continued their search if they could not be identified, the identification procedures were appropriate. Defendant's contention that the identification would have been suppressed had a motion been made must be rejected.

Finally, defendant asserts that his attorney was ineffective by simultaneously representing him and codefendant Maciejewski. He maintains that due to this conflict of interest, counsel was unable to vigorously defend him and at the same time discredit Maciejewski. To support his assertion, he points to the assistant State's Attorney's statement at the hearing on defendant's motion for a new trial that he "[did not] know why [the attorney] put on a defense to both defendants." The State responds that defendant has failed to establish an actual conflict of interest and instead engages in mere speculation.

Although an attorney's representation of multiple defendants with hostile interests will constitute a denial of the constitutional guarantee of effective assistance of counsel (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 349, 64 L. Ed. 2d 333, 347, 100 S. Ct. 1708, 1719), the mere fact of joint representation does not constitute a *per se* violation of that right. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 482, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178; *People v. Robinson* (1979), 79 Ill. 2d 147, 168, 402 N.E.2d 157; *People v. Mendez* (1991), 221 Ill. App. 3d 868, 872, 582 N.E.2d 1265, *appeal denied* (1992), 143 Ill. 2d 644, 587

N.E.2d 1021.) Instead, a defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance" (*Cuyler*, 446 U.S. at 350, 64 L. Ed. 2d at 348, 100 S. Ct. at 1719), by "point[ing] to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 18, 525 N.E.2d 30, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) In order to satisfy this burden, a defendant must allege more than mere hypothetical or speculative conflicts (*Robinson*, 79 Ill. 2d at 169; *People v. Berland* (1978), 74 Ill. 2d 286, 301, 385 N.E.2d 649, *cert. denied sub nom. Wolf v. Illinois* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64), and the record must demonstrate that the defense was inhibited by the joint representation. (*People v. Jones* (1988), 121 Ill. 2d 21, 30, 520 N.E.2d 325.) Finally, the fact that another attorney might have asserted a different theory of defense is irrelevant to our review, because "a positive basis must be found" in the record before determining that an actual conflict of interest existed. *People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.

In the instant case, defendant has presented no evidence that defense counsel advanced Maciejewski's interests to his detriment during trial. While it is true that Maciejewski's theory of defense was self-defense and defendant's was one of misidentification, that fact alone does not establish ineffective assistance of counsel. The record demonstrates that the attorney extensively questioned each of the State's witnesses about his or her ability to view the incident and identify the participants. Furthermore, the assistant State's Attorney's comment about defense counsel's performance at trial is insufficient to demonstrate that defendant's representation was adversely affected by codefendant's theory of defense. Accordingly, we cannot conclude that defendant's trial attorney labored under an impermissible conflict of interest.

Defendant lastly contends that the circuit court denied his due process right to present evidence in his defense when it gave extensive admonitions to Randy Llewelyn regarding his fifth amendment right to be free from self-incrimination before allowing him to testify on defendant's behalf. Defendant asserts that Llewelyn was ready, willing, and able to testify until the circuit court gave its "lengthy and intimidating" admonitions.

On the first day of trial, immediately after his own testimony, defendant called Llewelyn to the stand. Before he began his testimony, the assistant State's Attorney asked the court to inform Llewelyn of his *Miranda* rights. The court agreed, and told Llewelyn that he had been implicated by the State's witnesses and that he could be charged

with a crime as a result of his participation in the beating. Specifically, the court said: "I will tell you seriously right off that those four witnesses have put you right in the middle of this charge." When Llewelyn responded that he "believe[d] that [his] testimony would clear up the fact of what happened," the court replied that it did not know what it would "clear up" because the two police officers had testified that he was there and was part of the fight. The court then explained to Llewelyn his *Miranda* rights, made sure that he understood those rights, and asked if he wanted to meet with an attorney to explain more fully the consequences of his testifying on defendant's behalf. Llewelyn stated that he did and agreed to return the next day to speak with an assistant public defender before making a decision on whether to testify.

No mention of Llewelyn is made in the report of proceedings for the next day. Instead, the record discloses that counsel tried to call Nancy Johnson at the beginning of the second session. After the court barred both her and Saucedo from testifying, the defense rested.

Defendant now asserts that the court's comments to Llewelyn "drove the witness off the stand," thereby depriving him of his right to present favorable evidence. The State responds that defendant has waived this issue on appeal by failing to request a continuance to secure Llewelyn's presence in court, and by failing to raise a contemporaneous objection and include the matter in his post-trial motion. In the alternative, the State maintains that the court's admonitions were proper.

■ Although the State asserts that defendant has waived this issue by failing to make a timely objection to the court's statement, we note that the record reveals that when defendant's trial counsel began to object to the court's admonition, the court interjected: "Relax Counselor. When I talk, don't object. When [the State] talk[s], you object all you want." Thus, because it was the circuit court itself rather than defendant's failings which prevented the development of a complete record on this issue, we address the merits of defendant's contentions. See *People v. Barrow* (1989), 133 Ill. 2d 226, 260, 549 N.E.2d 240, *cert. denied* (1990), 497 U.S. 1011, 111 L. Ed. 2d 767, 110 S. Ct. 3257 (stating that a less rigid standard of the waiver rule applies "where misconduct of the trial judge is involved").

A fundamental element of due process is the right of an accused to present witnesses in his or her own defense. (*Washington v. Texas* (1967), 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023, 87 S. Ct. 1920, 1923.) That fundamental right is violated if the State or the court improperly admonishes defense witnesses about the potential ramifications of testifying, causing them not to testify. (*Webb v. Texas* (1972), 409 U.S. 95, 98, 34 L. Ed. 2d 330, 333, 93 S. Ct. 351, 353;

*People v. King* (1993), 154 Ill. 2d 217, 224, 608 N.E.2d 877; *People v. Pantoja* (1976), 35 Ill. App. 3d 375, 380, 342 N.E.2d 110.) Improper admonitions are those which are " 'unnecessarily strong' " or " 'threatening,' " and result in preventing the witness from making a free and voluntary choice of testifying. (*King*, 154 Ill. 2d at 224-25, quoting *Webb*, 409 U.S. at 98, 34 L. Ed. 2d at 333, 93 S. Ct. at 353.) Even if a court improperly deters a witness from testifying, however, a conviction need not be reversed on appeal unless the missing testimony would have affected the outcome of the trial. *King*, 154 Ill. 2d at 225.

In *Webb*, the Court reversed a defendant's conviction because the trial judge "effectively drove" the sole defense witness from the stand by telling him that if he lied he would be prosecuted, convicted for perjury, and have to serve additional time in prison. *Webb*, 409 U.S. at 98, 34 L. Ed. 2d at 333, 93 S. Ct. at 353.

Similarly, in *King*, our supreme court reversed a conviction where the circuit court "drove" a prospective defense witness from the stand by threatening to revoke an earlier plea bargain made before that court if it found the witness was lying. *King*, 154 Ill. 2d at 226.

■ In the instant case, the circuit court properly informed Llewelyn that he had been implicated in the beating and could face criminal prosecution for his participation. The record reveals that the court endeavored to ensure that Llewelyn understood his rights before he waived them by testifying. The record also reveals that Llewelyn was willing to return the following day to meet with an attorney in order to discuss the implications of his testifying. Because no further mention is made of Llewelyn, it may be assumed that he met with the attorney and decided for himself not to testify. Accordingly, we cannot conclude that Llewelyn was driven off the stand by improper admonitions as were the witnesses in *Webb* and *King*. Moreover, even if the admonitions were improper, in the absence of any offer of proof as to what his testimony would have been, defendant is unable to demonstrate any prejudice as a result of Llewelyn's failure to testify. See *People v. Blalock* (1993), 239 Ill. App. 3d 830, 838, 607 N.E.2d 645, *appeal denied* (1993), 151 Ill. 2d 567, 616 N.E.2d 339 (finding no prejudice even though a potential witness did not testify after the court told him that it would be "foolish" to testify).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.