No. 3--00--0049

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D.,
 2002 

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit, 

 ) Will County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 89--CF--665

 ) 

WILLIAM CABRERA, ) Honorable

                                ) Rodney Lechwar,

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

Modified Upon Denial of Rehearing 

JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

The defendant, William Cabrera, was convicted of first degree murder and was sentenced to natural life imprisonment.  Ill. Rev. Stat. 1989, ch. 38, par. 9--1(a)(2).  His sentence was ordered to be served consecutively with a previous sentence.  The defendant's conviction and sentence were affirmed by this court on direct appeal.  
People v. Cabrera
, No. 3--95--0148 (1998) (unpublished order under Supreme Court Rule 23).  Subsequently, the defendant filed a 
postconviction petition, which the State moved to dismiss.  The court granted a partial dismissal of his petition and held an evidentiary hearing on the remaining portion.  After the hearing, the court dismissed his petition.  On appeal, the defendant argues that: (1) his sentence was unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); (2) he was denied due process when Illinois Department of Corrections (DOC) personnel coerced an exculpatory witness not to testify; and (3) the court should have held an evidentiary hearing on the dismissed portion of his petition, which alleged that his trial attorneys were ineffective for failing to call two exculpatory witnesses.  We affirm in part, reverse in part and remand for further proceedings.

BACKGROUND

The defendant was charged by indictment with the first degree murder of Lawrence Kush, a DOC correctional officer.  The indictment alleged that Salvatore Giancana, David Starks, and the defendant caused the death of Kush at the Stateville Correctional Center by beating him about the head and body with pipes.

According to testimony at trial, the defendant was a member of the Latin Kings street gang.  The defendant held the high-ranking position of "nation enforcer" within the Latin Kings "nation."  He was responsible for enforcing the rules or "laws" for the entire "nation."

Officer Kush was known to be very thorough when conducting "shakedowns" of prison cells at Stateville to find contraband such as drugs, makeshift weapons, and money.  During one of these "shakedowns," the other correctional officer, who was conducting the "shakedown" with Kush, overheard inmate Gino Colon say that both Kush and the other officer were going to get what was coming to them.  Colon was one of the two highest-ranking members of the Latin Kings "nation."

Testimony at trial indicated that Colon ordered a "hit" on Kush because his "shakedowns" were interfering with the Latin Kings' drug business.  The State presented evidence that the defendant was in charge of enforcing the "hit" on Kush, and that he directed Starks and Giancana to carry out the "hit."

On July 1, 1989, Starks and Giancana put on prison jumpsuits, gloves, and stocking caps with holes cut in them such that the stocking caps looked like ski masks.  Starks and Giancana ambushed Kush and beat him about the head and body with pipes.  When other prisoners and prison officials discovered Kush and came to his assistance, he was vomiting and bleeding from the top of his head.  By the time Kush arrived at the hospital, he was brain dead from the injuries he sustained in this beating.  The pipes, jumpsuits, gloves, and ski masks used by Starks and Giancana were later recovered by investigators on the prison grounds.

At the conclusion of the defendant's trial, the jury found him guilty of first degree murder.  Ill. Rev. Stat. 1989, ch. 38, par. 9--1(a)(2).  During the death penalty phase, the jury directed the court not to impose the death penalty.

At the sentencing hearing, the trial judge considered whether the defendant was eligible for a natural life sentence.  First, the judge considered the discretionary factors whereby the court could impose a natural life sentence for this defendant.  Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1(a)(1)(b).  The judge stated that he did not find that the murder was accompanied by exceptionally brutal or heinous behavior.  The judge did, however, consider several aggravating factors listed in subsection (b) of section 9--1 of the Criminal Code of 1961 (Criminal Code).  Ill. Rev. Stat. 1989, ch. 38, par. 9--1(b).  The judge noted that a natural life sentence could be imposed because the murdered individual was an employee of the DOC.  Ill. Rev. Stat. 1989, ch. 38, par. 9--1(b)(2).  The judge also noted the possible involvement of aggravating factors listed in subsections (8), (9), and (10).  Ill. Rev. Stat. 1989, ch. 38, pars. 9--1(b)(8),(b)(9),(b)(10).

Next, the judge found that the defendant previously had been convicted of first degree murder
.  The judge concluded that "whether it is mandatory or whether it is discretionary, I am exercising my discretion to sentence this defendant and he is hereby sentenced to a term of natural life."   See Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1(a)(1)(c).

The judge further stated that the defendant's sentence was to be served consecutively to his prior sentence.  He stated that a consecutive sentence was mandatory under section 5--8--4(f) of the Unified Code of Corrections (Code of Corrections), because the defendant was committed to the DOC at the time he committed the instant offense.  Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--4(f).

Prior to this court's decision on his direct appeal, the defendant submitted a 
pro
 
se
 postconviction petition, which later was amended by court-appointed counsel.  In his amended petition, the defendant alleged that (1) his trial attorneys were ineffective because, contrary to his request, his attorneys refused to call David Starks and Wilfredo Rosario, who were exculpatory witnesses, and (2) he was denied due process because DOC personnel intimidated Brian Nelson such that he refused to testify for the defense.

The State moved to dismiss his amended petition at the second stage of postconviction proceedings.  The court dismissed that portion of his petition concerning Starks and Rosario, but allowed the petition to proceed to an evidentiary hearing on his allegations regarding Brian Nelson.  After the evidentiary hearing, the court dismissed his amended petition.  The defendant appeals.

Additional facts will be introduced as they are relevant to individual issues.

ANALYSIS

I. 
Apprendi
 Issues

A. The defendant's natural life sentence

When assessing the constitutionality of a statute, the standard of review is 
de
 
novo
.  
People v. Williamson
, 319 Ill. App. 3d 891,
 747 N.E.2d 26 (2001).

The sentence for first degree murder ordinarily is 20 to 60 years of imprisonment.  Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1(a)(1)(a).  However, if the court finds the presence of any of the aggravating factors listed in section 9--1(b) of the Criminal Code, the court may sentence the defendant to natural life imprisonment.  Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1(a)(1)(b).  Among the aggravating factors listed in section 9--1(b) is that the murdered individual was an employee of the DOC.  Ill. Rev. Stat. 1989, ch. 38, par. 9--1(b)(2).  Moreover, if the defendant previously has been convicted of first degree murder
, the court shall sentence the defendant to natural life imprisonment.  Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1(a)(1)(c).

In 
Apprendi
, the United States. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

In the present case, the judge ruled that the defendant could be sentenced to natural life in prison because the murdered individual was a DOC employee (discretionary sentence under section 5--8--1(a)(1)(b)), or because the defendant previously had been convicted of first degree murder
 (mandatory sentence under section 5--8--1(a)(1)(c)).  Because our analysis of the appropriateness of the defendant's mandatory life sentence under section 5--8--1(a)(1)(c) is dispositive, we need not address the court's imposition of a natural life sentence under the discretionary provisions of section 5--8--1(a)(1)(b).

The issue of whether a natural life sentence imposed under section 5--8--1(a)(1)(c) of the Code of Corrections violates 
Apprendi
 appears to be one of first impression in Illinois.  However, the imposition of enhanced and extended-term sentences based on a defendant's recidivism has been upheld under 
Apprendi
 by Illinois courts.

In 
People v. Lathon
, 317 Ill. App. 3d 573, 740 N.E.2d 377 (2000), the court held that while section 5--5--3(c)(8) (730 ILCS 5/5--5--3(c)(8) (West 1998)) authorizes an increase in a defendant's sentence if the defendant is convicted of a Class 1 or Class 2 felony after having twice been convicted of any Class 2 or greater class felonies, recidivism should not be treated as an essential element of the offense.

In 
People v. Childress
, 321 Ill. App. 3d 13, 746 N.E.2d 783 (2001), the court considered the defendant's extended-term sentence which was imposed under section 5--8--2(a)(3) of the Code of Corrections (730 ILCS 5/5--8--2(a)(3) (West 1998)).  Under this sentencing statute, a defendant can be sentenced to an extended term if the court finds the presence of aggravating factors listed in section 5--5--3.2(b) of the Code of Corrections (730 ILCS 5/5--5--3.2(b) (West 1998)).  In 
Childress
, the aggravating factor was the defendant's prior conviction of the same, a similar, or a greater class felony within 10 years of the instant conviction (730 ILCS 5/5--5--3.2(b)(1) (West 1998)).  The 
Childress
 court upheld the statute by stating that 
Apprendi
 does not render recidivist provisions unconstitutional.

We find the recidivist sentencing provisions of section 5--8--1(a)(1)(c) (Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--1(a)(1)(c) (West) to be analogous to those considered in 
Lathon
 and 
Childress
.  In this case, the defendant's sentence was increased to natural life from the range of 20 to 60 years because the defendant previously had been convicted of first degree murder
.  By analogy with the holdings of 
Lathon
 and 
Childress
, such an increase in the defendant's sentence because of recidivism was not unconstitutional under 
Apprendi
.  Therefore, we hold, as a matter of law, that the trial court did not err by sentencing the defendant to natural life imprisonment.  Because we base our ruling on the mandatory sentencing factor considered by the trial judge, we need not address the discretionary natural life sentencing factors considered by the trial court.

B. Constitutionality of the defendant's consecutive sentence

As noted, the court ordered the defendant's natural life sentence imposed in this case to be served consecutively with his prior sentence.  The defendant contends that the imposition of  consecutive sentencing in this case offends 
Apprendi
.  Pursuant to section 5--8--4(f) of the Code of Corrections, an offender's sentence shall be served consecutively to the sentence he was serving if the offense occurred while the offender was being held by the DOC.  Ill. Rev. Stat. 1989, ch. 38, par. 1005--8--4(f) (West).

Consideration of the constitutionality of section 5--8--4(f) under 
Apprendi
 also seems to be one of first impression.  However, in 
People v. Wagener
, 196 Ill. 2d 269, 752 N.E.2d 430 (2001), the Illinois Supreme Court recently subjected consecutive sentences imposed through section 5--8--4(b) to an 
Apprendi
 analysis.  In 
Wagener
, the court stated that consecutive sentences are not unconstitutional under 
Apprendi
 because each of the individual sentences imposed is within the statutory range established by the legislature.  We find the rationale of 
Wagener
 to also apply to consecutive sentences imposed under section 5--8--4(f).  Therefore, we hold as a matter of law that the trial court did not err by imposing consecutive sentences upon the defendant.

II. Due Process Claim

Next, the defendant contends that he was denied due process when DOC personnel coerced an exculpatory witness, Brian Nelson, not to testify.  Brian Nelson was an inmate at Stateville during the time that Kush was murdered.  At trial, when Brian Nelson was called as a witness for the defense, he was belligerent in court and refused to be sworn to testify.  He directed an obscenity at the court when ordered to answer questions, whereupon the judge found him in criminal contempt.  Defense counsel attempted to elicit unsworn testimony from him, but he gave nonresponsive answers.  Eventually, defense counsel ceased asking Brian Nelson questions and he was remanded to the DOC. 

At trial, Victor Spiezio, another inmate, had testified that the defendant was responsible for enforcing the "hit" on Officer Kush.  At the postconviction evidentiary hearing, Brian Nelson testified that Spiezio told him that he ordered the "hit" on Kush.  Brian Nelson also testified that Spiezio never mentioned to him the defendant in connection with the incident.  Brian Nelson further testified that correctional officers had discovered heroin and cannabis during a "shakedown" of his cell after Kush's death.  He testified that he was not prosecuted for possession of either of the drugs, but that he was placed in segregation for possession of cannabis.  On cross-examination, he admitted that the prison's report on this incident mentioned cannabis but not heroin.

Brian Nelson further testified that Russell Nelson, a DOC investigator, and other correctional officers threatened to bring federal charges against him for possession of heroin if he testified for the defendant at trial.  He stated that these correctional officers advised him that possession of the amount of heroin he had in his cell carried a natural life sentence.  Brian claimed that another inmate, Toby Phillips, was present during Russell's threat.

Russell Nelson testified at the postconviction evidentiary hearing that his conversation with Brian Nelson did not include any threats.  

Michelle Hansen also testified at the evidentiary hearing.  She had been the second chair defense counsel at trial.  She stated that during pretrial preparation, Stan Markun worked as an investigator for the defense.  Markun had taken a statement from Brian Nelson that Spiezio told Brian that someone other than the defendant committed the offense against Kush.  Hansen interviewed Brian prior to trial and Brian refused to testify.  Brian told Hansen that correctional officers had threatened to bring charges against him for something that occurred while he was incarcerated if he testified for the defendant.

After the evidentiary hearing, the court's written order dismissed the defendant's amended petition.  The court found that Brian Nelson's testimony was not credible and was not corroborated by independent testimony.

On appeal, the defendant argues that he was denied due process because Brian Nelson was coerced by DOC employees into refusing to testify for the defendant.  He asserts that Brian's testimony would have been exculpatory because it directly contradicted Spiezio's testimony at trial.  The defendant claims that Brian's testimony was corroborated by Hansen's testimony and was bolstered by the statement Brian gave to Markun.  Further, the defendant states that it was the State's burden to rebut Brian's testimony at the evidentiary hearing.  We disagree.

The Illinois Post-Conviction Hearing Act allows a person imprisoned in the penitentiary to collaterally attack his conviction based on the substantial denial of his constitutional rights.  725 ILCS 5/122--1 (West 1998).
  Following a third-stage evidentiary hearing on a postconviction petition, we subject the trial court's factual findings to a manifest weight of the evidence standard of review.  
People v. Childress
, 191 Ill. 2d 168, 730 N.E.2d 32 (2000). 

The State shall not deprive any person of liberty without due process of law.  U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.  A fundamental element of due process is the right of the accused to present witnesses in his defense.  
Washington v. Texas
, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967); 
People v. Johnson
, 262 Ill. App. 3d 781, 635 N.E.2d 827 
(1994).  A defendant's due process rights are violated if the State improperly admonishes defense witnesses about the potential ramifications of testifying, causing them not to testify.  
Webb v. Texas
, 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351 (1972); 
Johnson
, 262 Ill. App. 3d 781, 635 N.E.2d 827.  Threatening admonitions are improper and result in preventing the witness from making a free and voluntary choice of testifying.  
Webb
, 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351; 
Johnson
, 262 Ill. App. 3d 781, 635 N.E.2d 827.

In the instant case, Brian Nelson asserted that he was threatened by DOC personnel, causing him not to testify.  Michelle Hansen's testimony at the evidentiary hearing did not corroborate Brian's claim.  She only stated that Brian had related the same allegation to her.  The statement Brian gave to Markun made similar allegations that were unsubstantiated by any other testimony.  Brian claimed that Toby Phillips witnessed Russell's threatening remarks and, thus, could have corroborated his testimony, but Phillips did not testify either at trial or at the evidentiary hearing.

The defendant claims that it was the State's burden to rebut Brian's testimony at the evidentiary hearing.  The defendant, however, cites no authority for this proposition and this court knows of no such evidentiary requirement in such circumstances.

The trial court found that Brian's unsubstantiated testimony was not credible.  We find nothing in the record to indicate otherwise.  Therefore, the trial court's determination, following the evidentiary hearing, that the defendant had failed to establish a violation of his constitutional rights with respect to Brian Nelson's testimony was not manifestly erroneous.

III. Ineffective Assistance of Counsel

In his amended petition, the defendant alleged that his trial attorneys were ineffective by refusing to call David Starks and Wilfredo Rosario as defense witnesses despite the defendant's request that they testify.  According to Starks' affidavit attached to the petition, Starks would have testified that the defendant did not order the "hit" on Kush.  Rosario's affidavit stated he would testify that he did not have certain conversations with Spiezio contrary to Spiezio's testimony at trial.

At the hearing on the State's motion to dismiss, the court granted that portion of the motion regarding Starks and Rosario.  The judge stated that because these individuals were on the defendant's witness list, they were not unknown to defense counsel, and that the defendant's attorneys acted properly as a matter of trial tactics if they chose not to call two of their own witnesses.

If the circuit court determines that a postconviction petition should be dismissed without an evidentiary hearing, its judgment is subject to 
de
 
novo
 review.  
People v. Ponyi
, 315 Ill. App. 3d 568, 734 N.E.2d 935 
(2000).  Unlike partial dismissals of postconviction petitions at the first stage of the proceedings, partial dismissals at the second stage are not improper.  
People v. Lara
, 317 Ill. App. 3d 905, 741 N.E.2d 679 
(2000).

The right of the accused to counsel in preparation for trial is a fundamental constitutional right guaranteed by the sixth and fourteenth amendments of the Constitution of the United States, and article I, section 8, of the Constitution
 of the State of Illinois.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8.  This right includes the right to effective assistance of counsel.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674
, 104 S. Ct. 2052 (1984); 
People v. Albanese
, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) trial counsel’s performance fell below an objective standard of reasonableness, and (2) that counsel’s deficient performance so prejudiced the defendant that but for counsel’s errors the outcome of the trial likely would have been different.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674
, 104 S. Ct. 2052; 
Albanese
, 104 Ill. 2d 504, 473 N.E.2d 1246.
  When the record is unclear concerning whether trial counsel's decision not to call exculpatory witnesses was a matter of counsel's trial strategy or counsel's incompetence, the defendant is entitled to a postconviction evidentiary hearing on that issue.  
People v. Tate
, 305 Ill. App. 3d 607, 712 N.E.2d 826 (1999); 
People v. Gibson
, 244 Ill. App. 3d 700, 612 N.E.2d 1372 (1993).

In the instant case, the record reflects that Starks and Rosario were on the defendant's witness list, but were not called as witnesses.  The postconviction judge ruled that this decision was a matter of trial tactics and dismissed that portion of the defendant's petition.  We cannot say as a matter of law, however, that defense counsels' decision not to call these potentially exculpatory witnesses to testify was a matter of trial strategy.  The record does not contain sufficient facts from which to make such a determination.  Once evidence is heard on this matter, the circuit court will be in a better position to determine whether the defendant was deprived of effective assistance of trial counsel.  Therefore, we reverse the trial court's partial dismissal of the defendant's petition and remand the matter for an evidentiary hearing on that portion of his petition.

CONCLUSION

For the foregoing reasons, we reverse the partial dismissal of the defendant's postconviction petition by the Will County circuit court and remand for an evidentiary hearing on the dismissed portion of his petition.  We affirm all other aspects of the Will County circuit court's ruling.

Affirmed in part and reversed in part; cause remanded.

HOLDRIDGE and MCDADE, JJ., concurred.