2020 IL App (1st) 163025-U

No. 1-16-3025

Order filed April 9, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94 CR 20697 |
| | ) | |
| HERMAN TOWNSEND, | ) | Honorable |
| | ) | Joseph G. Kazmierski Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in dismissing defendant's postconviction petition claim of ineffective assistance of counsel at the second stage where defendant did not substantially show that his trial counsel was ineffective for failing to call and investigate a witness.

¶ 2    Defendant Herman Townsend appeals from the second-stage dismissal of his petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)). On appeal, he contends that the court erred in dismissing his petition because he made a substantial

showing that his trial counsel was ineffective for failing to investigate and call a witness.[1] We affirm.[2]

¶ 3    On July 12, 1994, Frank Jones was shot and killed on the front porch of his mother's home located on the 11000 block of South Morgan Street.[3] Defendant was indicted on two counts of first degree murder. Following a 1996 jury trial, defendant was found guilty of first degree murder and sentenced to 55 years' imprisonment.[4] We affirmed his conviction and sentence on direct appeal. *People v. Townsend*, No. 1-97-0970 (1998) (unpublished order under Illinois Supreme Court Rule 23). Because our order on direct appeal set out the facts of the case in detail, we recount them here as necessary to resolve the issue raised on appeal.

¶ 4    At trial, the jury heard testimony from law enforcement officers and other witnesses, including Fritz Benodin, who identified defendant as one of two shooters. Fritz, Frank's lifetime friend and neighbor, testified that he knew defendant for six years because the trio would play basketball on the weekends. Fritz knew the Mickey Cobra street gang were an enemy of the Gangster Disciples gang. On July 11, 1994, going into July 12, 1994, Fritz was looking out of his window and saw defendant and another man across the street behind a pickup truck. A white Pontiac Bonneville drove by, and Fritz saw defendant's companion make a gesture, "throwing down the fork." Fritz testified this gesture was a gang sign indicating disrespect toward the

---

[1] One of defendant's postconviction petition claims advanced to the third stage, where after an evidentiary hearing it was denied. Partial dismissals of petitions at the second stage of a postconviction proceeding are not improper. *People v. Cabrera*, 326 Ill. App. 3d 555, 564 (2001).

[2] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[3] Because multiple parties share the same last names, we refer to these parties by their first names.

[4] Judge Joseph G. Kazmierski Jr. presided over the trial and postconviction hearings unless otherwise written.

Gangster Disciples gang. After the Bonneville drove by, he saw defendant and the other man cross the street toward Frank's house. Fritz saw defendant fire four shots and the other man fire five. Fritz could not see who was on the porch, but he heard Frank scream out "God, help me." Defendant then ran past Fritz's house.

¶ 5    Fritz alerted his mother, Charlene Benodin, about the shooting and called the police. He told Charlene that defendant was one of the shooters. When he spoke to police and gave descriptions of the two men, he did not identify defendant because he was afraid and anxious. Three days later, on July 15, 1994, he went to the police station with his mother and viewed photographs. Although Fritz identified defendant in a photograph and stated that he knew defendant, he did not identify defendant as the assailant at that time. On July 30, the police brought Fritz back to the police station. After speaking with officers and then his mother at the station, he returned home and spoke with his mother and grandmother. He returned to the station and identified defendant as one of the shooters. Fritz explained that although he knew defendant was the shooter, he delayed in telling police for fear of retaliation. Fritz stated Randy Murphy wanted him to change his testimony and Murphy told Fritz that defendant offered a "chain" to change it.

¶ 6    Charlene testified that, on the night of the murder, Fritz told her that defendant shot Frank. She did not tell him to notify the police because she feared that the gangs would retaliate.

¶ 7    Bernice Jones, Frank's mother who did not directly witness the shots, testified and corroborated Fritz's testimony that there were multiple shots and Frank said, "oh God, help me."

¶ 8    Firearms examiner Ernest Warner testified that of the 14 discharged cartridges gathered from the crime scene, 9 came from one gun and the other 5 did not come from this gun although there was not enough information to tell if all 5 came from same gun.

¶ 9       Ebonee Sallis, who knew defendant from grammar school, testified that on July 11, 1994, after 10:30 to 11 p.m., she saw defendant riding in a white Bonneville with Damen Price several blocks from the scene of the murder.

¶ 10      Mecoe Franklin, the mother of defendant's child, testified as an alibi witness. She stated defendant was with her the whole day and night of July 11, 1994. On cross-examination, the State asked her about her initial statement to the police and an assistant state's attorney, wherein she told them that she and defendant watched movies on the night of July 11, into the morning of July 12. She remembered making those statements but realized several weeks after the interview that they watched movies on a different night.

¶ 11      Murphy testified he knew Frank, defendant and Fritz, and that "everyone in the neighborhood" knew Fritz was a witness to Frank's murder. On August 23, 1996, Murphy bumped into Fritz, and brought up the case against defendant. Fritz told him "don't worry about the case." Fritz knew defendant "didn't do it, and he is not going to go to court." Murphy denied offering Fritz a gold chain to change his story.

¶ 12      The jury found defendant guilty of first degree murder, and the court sentenced him to 55 years' imprisonment.

¶ 13      On direct appeal, defendant argued that he was not proven guilty beyond a reasonable doubt, prejudicial and irrelevant gang evidence was introduced, the trial court erred by allowing uncorroborated testimony regarding an alleged bribery attempt, the State made improper and inflammatory remarks during closing arguments, the court erred by forbidding defendant's closing argument regarding the uncorroborated bribery attempt, and the court erred by allowing prejudicial morgue photographs into evidence. This court affirmed his conviction. *Townsend*, No. 1-97-0970.

¶ 14    On December 7, 1998, defendant filed a postconviction petition under the Act, in which he filled out a form but did not include any claims. The trial court summarily dismissed his petition on December 30, 1998, finding it to be frivolous and patently without merit. On appeal, this court affirmed that order, after granting appointed counsel's motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Townsend*, No. 1-99-0822 (1999) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15    On July 20, 2004, defendant filed a *pro se* "Motion to Vacate Judgment." He attached a notarized letter from Brian Ware indicating that "Fritz Benodi" from 110th and Morgan said he was a witness in the Townsend case but did not see defendant do the crime.[5] On September 9, 2004, the court construed the motion as "a post-conviction matter of some sort" and appointed counsel. When the case was called on October 28, 2008, defendant wanted to "clarify" his intent with regard to the motion to vacate judgment and requested that it be considered as a postconviction petition under the Act although it "was originally filed as a 2-1401." The court granted defendant's request.

¶ 16    On May 23, 2013, the court, with Judge Angela M. Petrone presiding, granted leave for postconviction counsel to file an amended petition for postconviction relief. Postconviction counsel filed an "Amended Petition for Post-Conviction Relief—Allegation of Actual Innocence" which superseded the earlier motion to vacate. The amended petition was accompanied by affidavits from Ware, defendant, and Brenda Townsend, defendant's mother. The amended petition raised two claims: (1) that trial counsel was ineffective for not calling Ware to testify and

---

[5] It is unclear from the record if Ware misspelled Fritz's last name or if it was cut off.

impeach Fritz, and (2) that defendant was denied the right to testify in his own trial by threats from his trial counsel.

¶ 17    In his affidavit, Ware averred he became aware that defendant was charged with the shooting of Frank, and that Fritz was a witness. Before defendant was convicted, Ware was on Morgan Street and saw Fritz. Ware talked about the case with Fritz and asked Fritz if he was going to be a witness. Fritz told him that "he knew that [defendant] was not involved in Frank Jones' shooting." Ware averred he was not contacted by defendant's trial counsel. In her affidavit, Brenda averred that Ware told her this information which she relayed to defendant's trial counsel.

¶ 18    In his affidavit, defendant averred that he was a member of the Mickey Cobra gang. On the night of the murder, defendant was with Price, Danny Leake and John Hutchinson, and saw Leake and Hutchinson open fire on Frank. He knew both Leake and Hutchinson were armed, and he unsuccessfully attempted to signal both verbally and physically that Frank was not a member of a gang and not a threat to them.

¶ 19    The State filed a motion to dismiss the amended petition, arguing that defendant failed to present a cognizable actual innocence claim, and failed to satisfy the cause-and-prejudice test.

¶ 20    On December 22, 2014, the court granted a partial dismissal of the petition. The court stated that "I looked at the motions and also the responses in the amended petition. I am only moving one issue on the defendant's petition to the third stage and that involves his alleged allegation of ineffective assistance of counsel for his attorney preventing him from testifying in the case." The court explained:

"[t]he other issue with regard to Brian Ware's affidavit is cumulative in the case. The evidence - - there was extensive evidence given the nature of Mr. Binoden's, Fritz

Binoden's testimony, his identification, all of that was - - covered quite extensively by both sides during the course of the trial, so that was already a matter of record. An his - - Ware's affidavit is merely cumulative of that evidence that was already given.

So to that extent, the motion - - the motion to dismiss is granted as to that claim.

So the only claim I am moving to third stage is, as I said, that involving the second claim, that he was denied a right to testify by his attorney, was thereby given ineffective assistance of counsel do [*sic*] to a conflict of interest on behalf of Mr. Sorenson."

¶ 21 An evidentiary hearing was held on May 4, 2016, and June 20, 2016, on the allegation that defendant's trial counsel was ineffective for preventing him from testifying at trial. Judge Timothy Joyce presided over the hearing. At the hearing, defendant and Brenda testified, and the State called defendant's trial counsel, James Sorensen. Sorensen testified that defendant never told him he was present at the shooting, and Sorensen did not attempt to persuade defendant not to testify. On October 27, 2016, the court denied defendant's postconviction petition. Defendant orally argued a motion to reconsider, which was denied. In denying the motion, the court explained, "I did not believe your testimony or your mother's testimony, and I did believe Mr. Sorenson's."

¶ 22 On appeal, defendant solely argues that the court erred in dismissing his claim that his trial counsel was ineffective for failing to call Ware to testify. He argues that Ware's affidavit and Brenda's affidavit show that trial counsel failed in his duty to investigate evidence that would have contradicted the State's case.

¶ 23 The Act permits a defendant to collaterally attack a conviction by arguing that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2016). The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688,

¶ 32. The Act contemplates the filing of only one postconviction petition but a successive one may be filed with "leave of court." *People v. Edwards*, 2012 IL 111711, ¶¶ 22, 24. Here, the trial court granted defendant leave to file an amended petition and the petition advanced to the second stage.

¶ 24     At the second stage, the defendant "bears the burden of making a substantial showing of a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35; *People v. Lee*, 2016 IL App (1st) 152425, ¶ 47. The defendant's allegations in the second stage are taken as true unless affirmatively rebutted by the record. *Domagala*, 2013 IL 113688, ¶ 35. There is a substantial showing of a constitutional violation if the well-pled allegations of constitutional violations are legally sufficient to entitle a petitioner to relief. *Id.* If the defendant succeeds in making a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Id.* ¶ 34.

¶ 25     Defendant appeals from the second-stage dismissal of his claim that he received ineffective assistance of trial counsel based on counsel's failure to investigate and call Ware as a witness. A dismissal of a postconviction petition at the second stage is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31. Our review takes the allegations in the petition as true, but we make our own independent assessment of the allegations of the petition and supporting documentation. *Id.*

¶ 26     Every Illinois defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and under article I, section 8 of the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Domagala*, 2013 IL 113688, ¶ 36. The United States Supreme Court established the standard upon which claims of ineffective assistance are judged in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984) (adopting *Strickland* for Illinois). To succeed "a defendant must demonstrate that counsel's performance was deficient and that the deficient

performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36, (citing *Strickland*, 466 U.S. at 687).

¶ 27    Counsel's performance is deficient when a defendant proves "that counsel's performance was objectively unreasonable under prevailing professional norms." *Id.* Counsel's performance is considered prejudicial when "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). This "reasonable probability" is "a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220, 283 (2004). A defendant must satisfy both prongs of the *Strickland* test. *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 28    In this court, defendant argues that his trial counsel's failure to investigate and call Ware to testify was objectively unreasonable. He argues it was not a strategic decision by counsel and that the testimony of Ware would have been admissible and valuable.

¶ 29    It is well-established that the choice on what witnesses to call "is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant." *People v. Peterson*, 2017 IL 120331, ¶ 80. However, trial counsel has a duty to conduct reasonable investigations into possible defenses. *Domagala*, 2013 IL 113688, ¶ 38. The failure to interview known witnesses can indicate incompetence when their testimony could be exonerating. *People v. Steidl*, 177 Ill. 2d 239, 256 (1997). " '[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " *People v. Guest*, 166 Ill. 2d 381, 400 (1995) (quoting *Strickland*, 466 U.S. at 691);

accord *People v. Pecoraro*, 175 Ill. 2d 294, 324 (1997). "Whether the failure to investigate constitutes ineffective assistance of counsel is determined by the value of the evidence not presented at trial and the closeness of the evidence that was presented at trial." *People v. Harmon*, 2013 IL App (2d) 120439, ¶ 26.

¶ 30     Here, we find that defendant did not make a substantial showing that his trial counsel was ineffective for failing to call Ware as a witness. In this case, defendant argues that trial counsel was ineffective for not investigating and presenting evidence —that Fritz told Ware "he knew that [defendant] was not involved in Frank Jones' shooting"—which was impeaching of Fritz's trial testimony. At the second stage we must take defendant's factual allegations as true. *Domagala*, 2013 IL 113688, ¶ 35. Even so defendant has not demonstrated that trial counsel was deficient given the substantial deference trial counsel has in deciding what to investigate. *Guest*, 166 Ill. 2d at 400. Defendant argues competent counsel would have investigated Ware because Ware's evidence was impeaching. Yet, Ware's testimony is not necessarily impeaching given Fritz's explained fear over his safety in identifying defendant publicly. Fritz's mother also testified that she did not tell him to notify the police because she feared that the gangs would retaliate.

¶ 31     Additionally, since trial counsel already attempted to impeach Fritz with Murphy's testimony that Fritz had told him defendant "didn't do it" defendant on appeal has failed to show it was incompetent to not call a second witness. See *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 53 (impeaching main witness with inconsistent statement made to officer where credibility and not identification was the main issue was not ineffective assistance of counsel when the witness had already been impeached regarding her description of the defendant to a nurse). Trial counsel's decision to forego investigating Ware, believing as true the information in Brenda's affidavit, was

reasonable trial strategy given that counsel called Murphy. At the evidentiary hearing, counsel provided reasons for why he did not call more alibi witnesses in general stating, "less is more" and he elected to call one "solid witness." This same logic applies in regard to both Murphy and Ware as impeachment witnesses.

¶ 32    The final consideration in an ineffective assistance of counsel argument involving evidence not investigated is considering "the closeness of the evidence that was presented at trial." *Harmon*, 2013 IL App (2d) 120439, ¶ 26. Here the evidence presented at trial was not close. Fritz testified that he saw the shooting and was able to make a clear identification of defendant, who he had known for six years and many details were corroborated by other evidence.

¶ 33    Ultimately defendant has failed to bear his burden of making a substantial showing that his trial counsel was ineffective for not calling Ware as a witness where it was trial counsel's strategic decision on what to investigate, which is given substantial deference. Accordingly, the court did not err in dismissing this claim at the second stage.

¶ 34    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35    Affirmed.