**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230102-U

Order filed December 19, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) ) | Appeal Nos. 3-23-0102 and 3-23-0103 (cons.) |
| v. | ) ) | Circuit Nos. 13-CF-1435 and 13-CF-2252 |
| | ) | |
| DWIGHT E. MUSSON, | ) ) | Honorable David M. Carlson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:  Defendant did not make a substantial showing of actual innocence or ineffective assistance of trial counsel. Postconviction counsel did not provide unreasonable assistance.

¶ 2     Defendant, Dwight Musson, appeals the Will County circuit court's order dismissing

various claims within his postconviction petition at the second stage. Defendant argues that he

made a substantial showing of actual innocence and ineffective assistance of counsel, such that

the court erred by dismissing those claims at the second stage. He further argues that postconviction counsel provided unreasonable assistance by failing to: (1) support his claims of actual innocence and ineffective assistance of counsel with evidence; (2) refer to evidence in the record that supported the actual innocence claims; (3) raise a vindictive prosecution claim rather than a selective prosecution claim; (4) respond to the State's motion to dismiss; (5) make oral arguments opposing the dismissal of the actual innocence claims; and (6) seek postconviction forensic DNA testing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         Defendant was charged with unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2012)) in case No. 13-CF-1435 and drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2012)) in case No. 13-CF-2252. The matters proceeded to a bench trial in front of Judge David M. Carlson. At trial, the evidence established that on the night of June 27, 2013, defendant and Rebecca Sova obtained heroin and ingested it throughout that night and the morning of June 28, 2013, at defendant's father's house. Sova provided the money for the heroin and defendant had the connection to obtain it. Defendant admitted this in an interview with police. When defendant woke up to go to work on June 28, 2013, Sova did not wake up and made a gurgling noise. Defendant unsuccessfully attempted to contact Sova while he was at work. Defendant contacted Barry Burd and requested that he check on Sova. Burd told defendant he found Sova unresponsive. Defendant left work and found Sova in the same position she had been in when he went to work. Defendant drove Sova to the hospital. Sova later died and her cause of death was determined to be anoxic encephalopathy due to heroin and cocaine intoxication. During trial, defense counsel moved for a directed verdict and argued that there was no delivery, as defendant and Sova obtained the heroin together, and that the State failed to prove

2

heroin, not cocaine, caused Sova's death. The motion was denied. Thereafter, defense counsel presented expert testimony that Sova's ingestion of cocaine caused her death, not the heroin. After the close of evidence, defense counsel again argued that there was no delivery and that the heroin did not cause Sova's death. The court found defendant guilty and sentenced him to 11 years' imprisonment for unlawful delivery of a controlled substance and 24 years' imprisonment for drug-induced homicide. Defendant appealed and this court affirmed. *People v. Musson*, 2020 IL App (3d) 180477-U. In assessing the sufficiency of the evidence as to whether there was a delivery, this court noted that this case was close on that issue. *Id.* ¶ 89.

¶ 5        Defendant, through private counsel, filed a postconviction petition. The postconviction petition set forth the following claims of constitutional deprivations: (1) actual innocence based upon Sova having multiple sources of heroin (Barry Burd, Brian Blessen, Bridget Price, and Justin Kulish); (2) actual innocence based upon Burd's interaction with Sova (defendant alleges Burd had sex with and provided heroin to Sova while defendant was at work) on the June 28, 2013; (3) selective prosecution; (4) ineffective assistance of counsel due to counsel's failure to file a motion to suppress evidence based on the illegal seizure of defendant's phone; and (5) ineffective assistance of counsel for failing to call multiple witnesses who would have shown Sova had multiple other sources of heroin. Defendant attached various exhibits to his postconviction petition, including phone records, his affidavit, transcripts of police interviews with Burd, Price, and Blessen and a police report regarding an interview with Kulish.

¶ 6        The following are the relevant factual allegations contained in defendant's postconviction petition. Defendant, Sova, and Bridget Price ingested heroin at his father's house on June 26, 2013. Sova left the house that evening and when defendant awoke on June 27, 2013, Price was gone, but left a note saying she would return later that day with heroin. At that time there was

heroin at the house that was not purchased by defendant. The note was not attached to the petition, but defendant alleged that his father possessed the note at one point and was searching for it. Price knew where to get heroin. At the time defendant filed his postconviction petition, Price had convictions for drug-related offenses and was in jail for selling heroin and cocaine. Sova had dated Brian Blessen and they had done heroin together. Blessen cleared his phone prior to providing it to police. During the morning hours of June 28, 2013, Sova was texting with Justin Kulish and discussed Sova using heroin and cocaine. Kulish indicated he wanted to "dose" with Sova. Burd told investigators that he received the call from defendant to check on Sova at 1:00 p.m., but testified the phone call was at 10:00 a.m. Phone records show that Burd called defendant at 1:23 p.m. During the night of June 27, 2013, and the morning of June 28, 2013, there were many times that defendant and Sova were not together and when Sova would return she would be in an impaired state. Defendant could tell that Sova was ingesting heroin other than the heroin he obtained. Sova's father, David Sova, made threatening calls to defendant. David was a former police officer with the Joliet Police Department. David spoke with the deputy coroner early in the investigation and told the deputy coroner that he had spoken with the state's attorney about the case. After speaking with David, and although the Joliet Police Department was no longer the investigating entity, the coroner contacted a detective with the Joliet Police Department who was good friends with David. This matter was initially investigated as a drug overdose and later reclassified as a possession of a controlled substance matter. David requested that a sexual assault kit be performed on Sova. Pursuant to that request, a kit was performed which showed blood-like stains on the vaginal swabs. Defendant did not have sex with Sova during the days preceding Sova's overdose. A condom was found in the room where Sova and defendant slept the morning of Sova's overdose but defendant did not use condoms. The condom

4

was not in the room when defendant left for work. Defendant was interrogated by the Joliet police and then Shorewood police.

¶ 7   The court, Judge Carlson, advanced the petition to the second stage. The State filed a motion to dismiss. It argued that defendant's purportedly new evidence was not new, such that the actual innocence claims failed. The State also argued defendant's evidence did not show that anyone else provided Sova heroin on the morning she overdosed. The State further argued that defendant's allegation that Burd had sex with Sova and must have provided her with heroin is pure conjecture. The State argued that the selective prosecution claim failed because defendant did not identify what arbitrary classification was used to prosecute him. The State also argued that defendant failed to show that a motion to suppress would have been successful, such that the ineffective assistance claim failed. Last, the State essentially argued that the decision not to call witnesses was a matter of trial strategy and that the witnesses would not have been helpful to the defense.

¶ 8   Defendant, through counsel, filed a response to the State's motion to dismiss. He argued that there was new evidence attached to the petition, namely the evidence showing that Price was selling drugs. Defendant further argued that his allegation that Burd had sex with and supplied heroin to Sova was not pure conjecture. Defendant also acknowledged that he did not fit into a traditional suspect class, but argued he, being far older than Sova and possessing no criminal sophistication, was an easy target. Defendant also argued that a motion to suppress would have been successful. Last, defendant argued that the witnesses would have shown potential other sources of heroin for Sova and should have been called.

¶ 9   The court, Judge Carlson, held a hearing on the motion to dismiss. The State argued in line with its motion. Defendant's counsel focused largely on the ineffective assistance claim

regarding the motion to suppress and told the court that as to the issues other than ineffective assistance, he was going to stand on the arguments contained in the written response to the State's motion to dismiss. As to the ineffective assistance of counsel claim for failing to call witnesses regarding the alternate sources of heroin, counsel argued that there was evidence they were around Sova in the days prior to her overdose and that they were doing heroin with her. Counsel further argued that just because there was evidence Sova and defendant purchased heroin the night prior to her overdose, it does not mean she did not have other heroin.

¶ 10        The court took the matter under advisement and provided its ruling at a subsequent hearing. The court dismissed the two actual innocence claims because the supporting evidence was not newly discovered. The court then addressed the note allegedly left by Price and stated that "without more I can't – there is really nothing I can base any sort of decision as it relates to newly discovered evidence on that." The court dismissed the selective prosecution claim because there was no arbitrary classification that caused defendant to be prosecuted. Judge Carlson noted that he had presided over the trial in this matter and then found that trial counsel's decisions on calling or not calling certain witnesses were tactical decisions. The court noted that trial counsel's tactical decision as to what defense to present was a sound decision based upon the evidence. The court therefore dismissed defendant's claim of ineffective assistance of counsel for not calling certain witnesses. The court advanced the claim of ineffective assistance of counsel for failing to file a motion to suppress to third stage proceedings. Following an evidentiary hearing, the court denied that claim.  Defendant appeals.

¶ 11                                    II. ANALYSIS

The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a process for a criminal defendant to assert that his conviction resulted from a substantial denial of

6

his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the second stage of proceedings, "the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Additionally, at the second stage "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *Id.*

¶ 12                                    A. Actual Innocence

¶ 13        Defendant argues that the court erred in dismissing his actual innocence claim. Specifically, he argues that there was newly discovered evidence, the note from Price, that Price intended to deliver heroin to Sova and that heroin would be an intervening cause of Sova's death. In order for defendant to establish actual innocence based upon newly discovered evidence, the "evidence must be new, material, and noncumulative, and it must be of such conclusive character that it would probably change the result on retrial." *People v. Barrow*, 195 Ill. 2d 506, 540-41 (2001). Newly discovered evidence is "evidence that was not available at defendant's trial and that the defendant could not have discovered sooner through diligence." *Id.* at 541.

¶ 14        First, there is no indication in the record that the note was discovered after trial, rather than before trial. Therefore, defendant has not established that this note is in fact newly discovered. Regardless, we conclude that the note is not of such a conclusive character that it would probably change the result on retrial. Although defendant alleges that on June 27, 2013, Price left a note in his father's home indicating that she would return later with heroin, it is not evidence that she actually returned to the home with heroin, that she provided that heroin to Sova, or that Sova then ingested that heroin. Thus, there is nothing conclusive about this note

7

and it would be unlikely to change the result on retrial. Therefore, defendant failed to make a substantial showing of actual innocence, and the court did not err in dismissing this claim.

¶ 15                              B. Ineffective Assistance of Counsel

¶ 16          Defendant also argues that he made a substantial showing that his trial attorneys provided ineffective assistance of counsel because they failed to present evidence that Sova had alternative sources of heroin. "To establish a claim of ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice." *People v. Smith*, 195 Ill. 2d 179, 187-88 (2000). "Counsel's performance is measured by an objective standard of competence under prevailing professional norms." *Id.* at 188. "[T]he effectiveness of *** counsel must be assessed against an objective standard of reasonableness from the perspective of the time of the alleged error and without hindsight." *People v. Reed*, 2014 IL App (1st) 122610, ¶ 66. "[M]atters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Dupree*, 2018 IL 122307, ¶ 44. "Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel," and are "matters of trial strategy." *People v. West*, 187 Ill. 2d 418, 432 (1999). "Errors in trial strategy do not constitute ineffective assistance unless ' "counsel entirely fails to conduct any meaningful adversarial testing." ' " *People v. Custer*, 2019 IL 123339, ¶ 39 (quoting *West*, 187 Ill. 2d at 432-33 (quoting *People v. Guest*, 166 Ill. 2d 381, 394 (1995))).

¶ 17          Defendant takes issue with trial counsel's decision not to call various witnesses to introduce evidence that Sova had alternative sources of heroin. Such decision is a matter of trial strategy and even if it could be said that it was an error, it will not constitute ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing. However, here, trial counsel vigorously subjected the State's case against defendant to

8

adversarial testing. Trial counsel presented a case challenging whether there was a delivery and whether the heroin caused Sova's death. The defense strategy utilized by trial counsel, while ultimately unsuccessful, was reasonable. Moreover, there is no indication that any of the witnesses defendant argues should have been called—Burd, Blessing, Price, and Kulish—would have been cooperative and they largely[1] would have been able to invoke the Fifth Amendment right against self-incrimination related to any testimony implicating themselves in doing heroin with or providing heroin to Sova. As such, any testimony from these individuals would not likely have been helpful to defendant. Additionally, there simply was no evidence that any of those individuals actually provided heroin to Sova on the morning she overdosed. Thus, it was a reasonable decision not to pursue that line of defense and instead focus on the two defenses trial counsel presented. Therefore, defendant failed to present a substantial showing that counsel's performance was deficient and the court did not err by dismissing this claim at the second stage.

¶ 18                    C. Unreasonable Assistance of Postconviction Counsel

¶ 19        Defendant argues that postconviction counsel provided unreasonable assistance by failing to: (1) support his claims of actual innocence and ineffective assistance of counsel with evidence; (2) refer to evidence in the record that supported the actual innocence claims; (3) raise a vindictive prosecution claim rather than a selective prosecution claim; (4) respond to the State's motion to dismiss; (5) make oral argument opposing the motion to dismiss regarding the actual innocence claims; and (6) seek postconviction forensic DNA testing.

¶ 20        When defendants are represented by counsel during postconviction proceedings, they are entitled to a reasonable level of assistance from counsel. *People v. Garrett*, 2023 IL App (3d)

---

[1]We use the term "largely" only because Burd had immunity for some of his actions related to heroin.

9

210305, ¶¶ 17-18. Reasonable assistance is "a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Custer*, 2019 IL 123339, ¶ 30. When postconviction counsel files a compliant Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate, there is a rebuttable presumption that counsel provided reasonable assistance. *Garrett*, 2023 IL App (3d) 210305, ¶ 19. But, Rule 651(c) "applies only to those defendants who file their initial petition *pro se* and who are appointed counsel at the second stage." *People v. Johnson*, 2018 IL 122227, ¶ 18. "When Rule 651(c) does not apply, the court applies a general reasonable assistance standard," under which "a defendant needs to show some level of deficient performance by counsel and prejudice." *Garrett*, 2023 IL App (3d) 210305, ¶ 19.

¶ 21        Defendant first notes that he made two actual innocence claims: (1) that multiple people provided Sova heroin and (2) Burd supplied Sova with heroin and had intercourse with her. Defendant admits that the evidence attached to the postconviction petition was not newly discovered except for the alleged note left by Price. In this regard, defendant argues that the circuit court noted that the note might constitute newly discovered evidence but that since it was not attached to the petition it would not be considered. Defendant argues that counsel provided unreasonable assistance by failing to argue that failing to attach the evidence is not grounds for dismissal when the absence is explained and that if counsel had done so, the actual innocence claim would have survived. However, the trial court did not state either (1) that the note might be newly discovered or (2) that it was not considering the note for the sole reason that it was not attached. Rather the court indicated there was not enough information upon which it could base a decision as to newly discovered evidence regarding the note. Regardless, as set forth in paragraph 14 *supra*, even considering the note, defendant's actual innocence claim based upon that note was still properly dismissed. Thus, even assuming *arguendo* that postconviction

10

counsel was unreasonable for not making an argument that the note should be considered, defendant suffered no prejudice from this failure.

¶ 22 Defendant further faults postconviction counsel for failing to include affidavits from the other purported sources of heroin and failing to allege that these individuals would testify at trial. Additionally, defendant argues counsel was unreasonable for failing to attach any evidence, that purported to be newly discovered, that supported his argument that Burd supplied Sova with heroin and had intercourse with her. However, both of these arguments fail as our supreme court has stated that "[i]n the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *People v. Johnson*, 154 Ill. 2d 227, 241 (1993). Defendant also argues that postconviction counsel failed to file a response to the State's motion to dismiss; however, this argument is belied by the record. Defendant repeats these arguments in regard to postconviction counsel's purported failures relating to the ineffective assistance claim, and these arguments fail for the same reasons. Defendant makes various arguments regarding counsel's failures to point out specific evidence in the record to the court, but does not allege how bringing that evidence to the attention of the circuit court would have overcome the deciding issues—that he presented no newly discovered evidence to support his actual innocence claims and that trial counsel's failure to present certain evidence was a matter of trial strategy. As such, even if we could say that postconviction counsel should have made the arguments as defendant suggests, his claims would still have been properly dismissed and thus, he suffered no prejudice.

11

¶ 23    Defendant also argues that his ineffective assistance claim should have proceeded to the third-stage evidentiary hearing because case law—*People v. Cabrera*, 326 Ill. App. 3d 555, 564-65 (2001)—provides that when it is unclear whether trial counsel's decision not to call exculpatory witnesses was a matter of trial strategy or incompetence, defendant is entitled to an evidentiary hearing. However, *Cabrera* is distinguishable in that the witnesses at issue there provided affidavits giving exculpatory statements and it is unclear why they would not have been called as witnesses. *Id.* at 564. Here, it is clear that trial counsel's strategy did not involve attempting to show someone else provided Sova heroin when defendant admitted he did so. As explained above, there was no evidence the other individuals provided heroin to Sova, and it is likely those individuals would have invoked their Fifth Amendment right against self-incrimination or would have been otherwise uncooperative. As such, these individuals would likely not have been exculpatory witnesses. Couple that with the fact that trial counsel put forth two strong defenses, it is clear that the decision not to pursue a defense that someone else provided the heroin to Sova was trial strategy. Therefore, an evidentiary hearing was not warranted and the ineffective assistance of counsel claim was properly dismissed at the second stage.

¶ 24    Defendant next argues that postconviction counsel provided unreasonable assistance by alleging a selective prosecution claim instead of a vindictive prosecution claim because a selective prosecution claim requires a showing that the decision to prosecute was based upon an arbitrary classification such as race or religion but that a vindictive prosecution claim does not require such a showing. Defendant argues that the petition contained all of the factual prerequisites for a claim of vindictive prosecution based on the idea that defendant was charged because he sought medical care for Sova and Sova's father, David, exerted influence on the

12

prosecutor. Defendant further asserts that the evidence attached to the petition made a sufficient showing that but for David's actions, defendant would not have been charged.

¶ 25        "In Illinois, the prosecutor's charging decision is presumed to be lawful, and not vindictively motivated." *People v. Peterson*, 397 Ill. App. 3d 1048, 1055 (2010). To establish vindictive prosecution, "a defendant not only must produce objective evidence that the prosecutor had some animus or retaliatory motive, but also must produce objective evidence that tends to show the prosecution would not have occurred absent that motive." *People v. Hall*, 311 Ill. App. 3d 905, 913 (2000). If the referring agency harbors the animus, it can be imputed to the prosecutor but "only when a defendant can establish that the agency in some way prevailed upon the prosecutor to make the decision to prosecute." *People v. Fields*, 322 Ill. App. 3d 1029, 1032 (2001).

¶ 26        Here, looking into the allegations of the petition and the records attached thereto, we conclude that the petition would not have made a substantial showing of vindictive prosecution. The allegations of and evidence attached to the postconviction petition, taken as true, establish that: (1) David was a former officer of the Joliet Police Department; (2) David shared information with and/or obtained information from Joliet police officers, the coroner and the state's attorney; (3) the matter was initially investigated as a drug overdose but later reclassified to a possession of a controlled substance matter; and (4) David made threatening phone calls to defendant. None of this evidence is objective evidence of animus on the part of the prosecutor or the referring agency, which would have been the Shorewood Police Department. While it could potentially evidence animus on the part of David, he was no longer in law enforcement and had not been an officer with the Shorewood Police Department, the agency that ultimately handled the investigation. Defendant has cited no case law that the animus of a private citizen can be

13

imputed to law enforcement or the prosecutor. Moreover, none of the allegations taken as true could be considered objective evidence that tends to show the prosecution would not have occurred absent David's purported animus.

¶ 27    Defendant also argues that postconviction counsel provided unreasonable assistance by failing to request DNA testing of the condom pursuant to section 116-3(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3(a) (West 2020)). He argues he would have been entitled to the testing and that if the testing demonstrated the presence of another person, it would have bolstered his actual innocence and ineffective assistance claims.

¶ 28    Section 116-3 of the Code provides that a defendant can make a motion for DNA testing of evidence that was not tested at the time of trial. *Id.* However, in order to obtain testing the defendant must present a *prima facie* case that identity was the issue in his trial and the evidence has been subject to a sufficient chain of custody. *Id.* § 116-3(b). Additionally, to obtain the testing, the court must make a determination that the result of the testing has the potential to produce new, noncumulative evidence materially relevant to defendant's claim of actual innocence. *Id.* § 116-3(c)(1). The testing allowed by section 116-3 is confined "to trials where identity was a legitimate contested issue." *People v. Urioste*, 316 Ill. App. 3d 307, 314 (2000).

¶ 29    It cannot be said that identity was a legitimately contested issue in defendant's trial. To the contrary, defendant admitted obtaining and ingesting heroin with Sova. The contested issues at trial were whether defendant delivered heroin to Sova and whether heroin and/or cocaine caused her death. Thus, any motion for DNA testing would not have been successful and postconviction counsel did not provide unreasonable assistance by failing to request it.

¶ 30                                    III. CONCLUSION

¶ 31    The judgment of the circuit court of Will County is affirmed.

¶ 32    Affirmed.

¶ 33    PRESIDING JUSTICE McDADE, dissenting:

¶ 34    I dissent from the majority's decision to affirm the circuit court's dismissal of Musson's postconviction petition at the second stage.

¶ 35    While the majority recognizes that well-pled facts that are not positively rebutted by the record must be taken as true at the second stage of postconviction proceedings (*supra* ¶ 11), the majority fails to recognize that courts are prohibited from engaging in any fact-finding or credibility determinations at the second stage (*People v. Coleman*, 183 Ill. 2d 366, 385 (1998); see also *People v. Domagala*, 2013 IL 113688, ¶ 35). I believe that the majority's analysis is replete with fact-finding and credibility determinations. I would not engage in these prohibited functions and would instead reverse the circuit court and remand the case for third-stage postconviction proceedings.